UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID BALL,<br>      Defendant. | Criminal Action No. 23-153 (JDB) |

# ORDER

Before the Court is defendant David Ball's motion to modify his conditions of pretrial release. Ball was charged via information with four offenses related to his alleged participation in the events at the U.S. Capitol on January 6, 2021. He was arrested in March 2023 and released pending trial subject to several conditions. One such condition was that Ball shall not possess firearms, destructive devices, or other weapons. Ball now asks the Court to modify this condition to permit him to use a hunting rifle. For the reasons set forth below, the Court will deny the motion.

## Background

Ball traveled from his home in Wells, Maine to Washington, D.C. on January 5, 2021 and went to the Capitol on January 6, 2021. See Gov't's Resp. to Def.'s Mot. to Modify Conditions of Release [ECF No. 17] ("Opp'n") at 1; Statement of Facts [ECF No. 1-1] at 2. Video evidence shows Ball entering the Capitol through the Senate Wing Doors at approximately 2:20 p.m.—seven minutes after those doors were forced open by rioters. Statement of Facts at 5. According to the government, Ball entered the Capitol carrying "a black flag featuring a skull and two short-barreled shotguns resembling a skull-and-crossbones symbol surrounded by the text, '2nd Amendment—1789—America's Original Homeland Security.'" Opp'n at 2. While inside the Capitol, Ball traveled into the Crypt, recorded videos on his phone, and chanted along with the crowd as it pushed up against a police line. Statement of Facts at 5–7. As he and the crowd pushed

up against the line of police, Ball evidently "can be seen pumping his fist in the air holding the [Second Amendment] flag." Opp'n at 2. He left the Capitol building at 2:38 p.m., approximately 20 minutes after entering. Statement of Facts at 11.

Ball was arrested on March 23, 2023 and appeared before a magistrate judge in the District of Maine. See United States v. Ball, Case No. 2:23-mj-68 (KFW) (D. Me., filed Mar. 23, 2023). The magistrate judge ordered Ball released pending trial subject to certain conditions of release. Relevant here, the judge ordered—over Ball's objection, see Opp'n at 3—that he shall "not possess a firearm, destructive device, or other weapon." Order Setting Conditions of Release at 2, Ball, Case No. 2:23-mj-68 (KFW) (D. Me. Mar. 23, 2023), ECF No. 7 ("Original Release Order"). The release order specified that Ball "must relinquish firearms by 5:00 p.m. [on] March 24, 2023" but that he "may maintain possession of bows." Id.

Ball made his initial appearance in this District on April 4, 2023. See Apr. 4, 2023 Min. Entry. At that hearing, the magistrate judge set conditions of release, including the same standard prohibition on possession of a firearm. See Order Setting Conditions of Release [ECF No. 8] at 2. The judge did not, however, include the same instruction clarifying that Ball could use his hunting bow. See id.

On June 22, 2023, Ball filed the instant motion requesting that the Court modify his conditions of release to allow him to access "his Remington .308," a hunting rifle, "for hunting purposes only." See Mot. to Modify Conditions of Release [ECF No. 16] ("Mot.") at 1. The government filed an opposition on July 3, 2023, which noted that Pretrial Services also opposes the request. Opp'n at 1. The motion is now ripe for decision.

**Legal Standards**

Criminal defendants released pending trial are always released subject to at least two conditions: they must cooperate in the collection of DNA and may not commit a crime during the period of release. See 18 U.S.C. § 3142(b). However, if a court determines that release under only those two conditions "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the court "shall order the pretrial release of the person . . . subject to the least restrictive further condition, or combination of conditions" that the court determines "will reasonably assure" the defendant's presence as required and the safety of the community. Id. § 3142(c)(B). Section 3142(c)(B) enumerates certain conditions that the court may impose, and one such enumerated restriction is that a defendant "refrain from possessing a firearm, destructive device, or other dangerous weapon." Id. § 3142(c)(B)(viii).

In determining the proper conditions of release, a court "shall . . . take into account the available information concerning": (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community." 18 U.S.C. § 3142(g). A court may amend conditions of release "at any time." Id. § 3142(c)(3).

### **Analysis**

Ball's motion requests that the Court modify his conditions of release to permit him to use his Remington .308 rifle for hunting, and the Court will thus assess the § 3142(g) factors applicable to this restriction.

As to the first two factors, there is overwhelming evidence that Ball participated in the horrific events at the Capitol on January 6—video evidence shows him as part of the mob that stormed the building. Ball argues that he "is not accused of engaging in any violent behavior as it

3

relates to his conduct on January 6, 2021." Mot. at 2. True, but, although Ball is not charged with any crimes of violence, the government does allege that he "willfully and enthusiastically joined in the breach," including "push[ing] to the front of an aggressive crowd as it confronted and eventually overpowered a line of Capitol Police officers." Opp'n at 6; see Statement of Facts at 7–8 (describing video footage of this confrontation). And—most concerningly for the present motion—Ball carried a flag into the Capitol which advocated for Second Amendment rights and suggested that exercising such rights was necessary for his, or the country's, security. As the government describes, carrying this specific flag "demonstrates the defendant's association between his possession of firearms and his participation in the breach of the U.S. Capitol." Opp'n at 6. The remaining two factors are more neutral: although Ball has some criminal history, Pretrial Services assessed his danger of rearrest as "medium." Pretrial Services Report [ECF No. 7] at 1.

Notably, after considering these factors, two judges—a magistrate judge in Maine and one in this District—have already determined that the restriction on firearms was warranted. The Court concurs with the assessments of those judges and believes that, particularly in light of Ball's conduct on January 6, a restraint on firearm possession is the "least restrictive" condition that will "reasonably assure . . . the safety of any other person and the community," § 3142(c)(B).

Ball raises three reasons why he believes a modification is nonetheless warranted. He "has been an avid hunter for twenty (20) years," and his hunting is "not just for sport." Mot. at 1. Instead, he "relies on hunting as a less expensive and healthier alternative to store bought meat" and "assists other less fortunate individuals in his community by providing meat for their families." Id. at 2. Finally, Ball notes that his son has cystic fibrosis, and hunting is "one of the activities that greatly assists" his son's physical and behavioral health. Id.

4

The Court is sympathetic to each of these concerns. But banning Ball's use of firearms does not restrict him from hunting, and thus does not restrict him from providing meat for his family and the community, or from accompanying his son on hunting trips. As the government notes, following discussion of the hunting issue, the magistrate judge in the District of Maine specifically ordered that Ball surrender his firearms but be permitted to use his hunting bow. See Opp'n at 3; Original Release Order at 2. Use of a less dangerous weapon for hunting addresses each of Ball's concerns while still ensuring the safety of the community.[1] And, notably, Ball could still achieve two of his cited benefits of hunting—the ability to help his community and better his son's physical and behavioral health—with different activities, such as other volunteer work or different activities.

The operative order setting conditions of release—which was ordered by a magistrate judge in this District—does not specify that Ball may use a hunting bow.[2] The government does not oppose amending Ball's conditions of release to permit use of his hunting bow, and the Court will accordingly clarify that condition. However, Ball has not presented sufficient reason for the Court to believe that the firearm restriction is overly restrictive or unwarranted, and thus the Court will deny his request to modify his conditions of pretrial release to permit use of his hunting rifle.

\*   \*   \*

For the foregoing reasons, and upon consideration of [16] defendant's motion to modify his conditions of release, and the entire record herein, it is hereby

---

[1] The government makes this point in its opposition, see Opp'n at 7, and Ball did not file a reply contesting it.

[2] Because the order prohibits use of "weapon[s]," it arguably bans the use of a hunting bow absent a caveat like the one given by the magistrate judge in Maine.

5

**ORDERED** that [16] the motion to modify conditions of release to allow use of a hunting rifle is **DENIED**; and it is further

**ORDERED** that Condition 7(k) in [8] the April 4, 2023 order setting conditions of release shall be **AMENDED** to state that defendant may "not possess a firearm, destructive device, or other weapon; except that the defendant may possess and use hunting bows."

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: July 14, 2023